Case this morning is 14-1432 in Vista North America v. M&G Polymers USA. And in particular, the 216 patent is directed to a composition of very specific ingredients. And my comments today are going to be focused on one of those ingredients, the claim co-polyester comprising a metal sulfonate salt. Although M&G has raised a number of issues in its brief, my focus today is going to be on the claim construction for co-polyester comprising term, and then the impact of the The Delaware court made an error of law when it construed the co-polyester comprising term to mean, quote, a co-polyester including, but not limited to, a metal sulfonate salt. The court chose to ignore the patentee's own disclaimer made during prosecution, a disclaimer that was simple, unambiguous, and supported by the specification's disclosure of both a polymerization and blending of ingredients. In a 112 rejection of indefiniteness, the examiner expressed her confusion by asking a very simple yes-no question. Was the metal sulfonate salt attached or not attached to the co-polyester? And it really doesn't get any more simple than that. In direct response, and this is in-house patent counsel, did two very important things. First, the in-house counsel amended the word containing to the word comprising, thus differentiating the 216 patent from the priority 159 patent. And second, in-house patent counsel told the examiner, quote, for the record, the metal sulfonate salt is not attached to the co-polyester. It was a simple answer to a simple question. If that was just flat-out wrong, though, it's not a disclaimer, is it? Sure, Your Honor, because the question was going to the fact of the structural relationship between the metal sulfonate salt and the co-polyester. But if the co-polyester really is attached, and the specifications show that it's attached, that's how it operates when you mix this salt with the co-polyester, the fact that a patent attorney may have said something during the prosecution that just made no sense can't be used as a stop-all, can it? Well, certainly, Your Honor. First off, I would argue that there are a couple different embodiments disclosed in the 216 patent. You have the polymerization where the metal sulfonate salt is incorporated into the background of the co-polyester chain. But the specification also very clearly talks about blending in the abstract, the written description, as well as some of the test runs. And so the 159 priority patent that uses the co-polyester containing a metal sulfonate salt, every place where they talk about containing in the patent, it's in the relationship of the polymerization. Do you think there's places in the specification that show this co-polyester mixing with the sulfonate? I don't have the right words, but you know what I'm talking about. Correct. Where they're mixed and stay separate, they don't chemically react? Correct, Your Honor. Is that possible? It is. When you look at the test runs, Your Honor, what they did, especially, well, what they did is you had the co-polyester salt was part of a master batch. What that master batch is, is it's a second co-polyester. The claim limitation does not specify which co-polyester the metal sulfonate salt is not attached to. So in the test runs, five through eight, as well as the 22 through 24, there are two co-polyesters. So the metal sulfonate salt is attached to one, but not attached to the other. And that is very clear in here. And so in that regard, the claim limitation is met because there's no distinction in there that the metal sulfonate salt has to be attached to a very particular co-polyester. It just has to be not attached to another co-polyester. And why this is important is because from the... So, I'm sorry, the chemistry is hard for me. But you are saying that the metal sulfonate salt does attach to some co-polyester, just not all of them? Correct. In the 216 patent, it is attached, you have some resins, S1 and S2, and the metal sulfonate salt is attached, incorporated into the backbone of those co-polyesters. However, when you look at test runs five through eight, there's another resin, A. So the metal sulfonate salt is not attached to A. In test runs 22 through 24, you have another co-polyester that's introduced with the cobalt master batch. So the metal sulfonate salt that's attached to S2 in those runs is not attached to the co-polyester introduced with the cobalt master batch. And when you look at the patent itself, the abstract talks about a blending. And then when you also talk about, I'm sorry, on column five, rows 40 through 44, as well as lines 54 to 55, they talk about blending components. It would be very clear to someone of ordinary skill in the art to know that blending is a mixing without the attachment, without the polymerization. And then also, when they talk about the polymerization, that it would be incorporated into the backbone. So continuing on with this important disclaimer, one of the other things is what this satisfies is the policy providing public notice as to what the scope of the patent is. The plaintiffs are asking that this court ignore that statement, ignore that the patent teaches blending, ignore that you had a very specific 13-word disclaimer, not to mention an amendment that went with it. I mean, in response to that question, a very direct question, they amended a word and they made a statement. And to now take that away and to violate the public policy notice, they're looking for a do-over. And that just runs afoul of the notice argument. The other important thing is to look at this patent with respect to the priority patent, the 159 patent. The claim term there is copolyester containing a metal self-made salt. And when the 216 patent was filed, it was filed with the exact same claim term. And it has the exact same patent examiner. But in this case, the examiner goes, well, wait a minute. What is it? Is it attached? Is it not attached? So they amended the word containing to comprising, and then they made that very clear 13-word statement. So to now construe the 216 to be the same as its parent, 159, that just runs afoul of what did the amendment mean and what did the statement mean. It would be meaningless, actually. And so what happens is the district court construed these two claim terms in the two different patents the exact same way. Now, plaintiffs have argued that the word comprising, in fact, now we all know, very open-ended term, and they cite the Mars v. Hines, and even the district court judge cited Mars v. Hines. But when you look at Mars, the difference there is that the word containing is not the transitional phrase. It's in the body. It was filed with that word. It states that word. There was no amendment to change it. There was nothing in the record for this court to deviate from the ordinary and customary meaning of the word containing. That's not this case. Our case is we had an amendment, and we had a statement made. And therefore, there has to be a reason for that, and that gives the reason to deviate from the ordinary and customary meaning of the word comprising. Plaintiffs also argue that the 216 patent demonstrates the polymerization and the open-endedness of the word containing. And they've cited to Column 4 and Column 8. But when you look at these sites in the patent, it's very specific and very express, where the word containing is used only with the polymerization embodiment. So Column 4, line 67 to Column 5, line 9, it references a copolyester containing a metal self-made cell group, and it talks about polymerization. Column 8, lines 39 to 43, talk about a series of copolyesters were made containing various amounts of SIPA, which is the metal self-made cell. So again, the containing word is used with polymerization. When they made the change from containing to comprising in response to the examiner's question, it had to mean something, and it meant the alternative embodiment that are taught in the 216 patent, which is the blending. For the foregoing reasons, the proper claim construction of the term copolyester comprising a metal self-made cell requires that the metal self-made cell be not attached to the copolyester. And for this construction, M&G's accused product, the Polyprotect product, does not infringe the 216 patent. This is because the record is void of any evidence of Polyprotect having a metal self-made cell that is not attached to a copolyester. Looking at what the experts opined on this, M&G's expert, Dr. Moore, stated in his report that the Polyprotect is manufactured using polymerization, and thus the metal self-made cell is attached copolyester. There's no other copolyester or polyester in Polyprotect. There's the one and only. And this is carried through to his opinion on non-infringement. Regarding plaintiff's expert, Dr. Turner, he also opined that polymerization was used in the manufacturing of the Polyprotect product. His report, though, is void of any discussion of what happens in the proper claim construction or under defendant's claim construction, which is the non-attached. So, he had a section, actually, paragraphs 312 and 313 in his report, that were supposed to be dedicated to the non-attached discussion, when unfortunately, it appears he had a cut and paste error, taking from the 159 section to the 216. And so there's nothing in his report. This was brought out in his deposition. He never corrected it, never submitted a supplemental report, never filed a declaration. There's nothing in the record that under the proper construction of the metal sulfonate salt being not attached to copolyester, that there would be a finding of infringement. So, unless you have any questions, I'd like to thank you, and I'll save my time for a bottle. Fine. May it please the court. Obviously, I'll focus on the argument raised by the appellant. And what you've heard today is largely a new argument with respect to the claim construction. It is true, of course, that they argued for a non-attached below. But they focused solely on that disclaimer, and they never argued that the specification, in fact, taught alternatives in which it was not attached. In fact, all parties agreed at the district court that it is attached to the aromatic nucleus, which is in turn copolymerized into the backbone of the copolyester. And that's in the court's opinion, and it's throughout the record. The first time this argument appeared, that is, that there is another embodiment in which it is not attached, is in their reply brief here in this court. For that reason, it should not be considered at all. But it's also wrong, and I'll address why it's wrong. First of all, the construction that they've advocated of not attached is nonsensical. It violates multiple fundamental tenets of claim construction, including reading out all the embodiments, and I'll address their specific argument that there are embodiments that are not read out. It's nonsensical because it ignores the context of the file history as a whole, and when the file history as a whole is reviewed, there is not only one reasonable interpretation of this. Judge Robinson did a very careful analysis and found that there was another reasonable interpretation, in fact, the one that all the parties agreed on, that it was attached indirectly through the attachment to the aromatic nucleus of the sulfomonomer. So this is not a Chef American case where there was susceptible to only one reasonable interpretation, which may otherwise seem out of context. Could you talk about this mixing stuff? I'm not sure I followed your friend's argument completely, but to the extent I did, it sounded like she was saying that there's some polyesters that don't have anything attached, and that there's some polyesters that do have the sulfonate attached. That's the new argument first raised in the reply brief here, and let me address it. Is it true that there are alternative methods in the spec that talk about that kind of blend in? We do not believe that's true, Your Honor, and let me address that specifically. First of all, let me reiterate, this is the opposite of what they argued below. They argued below that the metal sulfonate salt is attached and that the specification only teaches attached. So the argument they're now making is new. The specific argument that she's raised, that Mr. Otenzo has raised today, is with respect primarily to Column 5 of the specification, and also she mentioned this example of S1, Examples 1 and 5. So let me address those particularly. With respect to Examples 1 and 5, and this is maybe the point on which Your Honor was somewhat confused, Mr. Otenzo, I think, admitted, and they have to admit, that there is a copolyester attached to a metal sulfonate salt in those examples. What they say is there's another polyester as well. That's irrelevant. The claim requires that there be a copolyester containing a metal sulfonate salt, and it does. And it's attached, and there's no dispute about that. So Claims 1 and 5, or Examples 1 and 5, I'm sorry. Well, does it require all the copolyesters to have the sulfonate salt attached? I don't believe the claims require that. I don't believe that's an argument that was ever made before. Does it require some copolyesters not to have the sulfonate attached? It doesn't require that either. The point, I think, with respect to those examples, and why they're not relevant, is they all show a copolyester that have the metal sulfonate salt attached, as the claim requires, and they have none that disclose a metal sulfonate salt that's not attached to a copolyester. So there is no embodiment in those examples that shows that it's not attached to the copolyester. So what's their other new argument? It's Column 5, and they say that Column 5 somehow teaches that there can be some physical mixing that doesn't involve copolymerization in which there would be attachment of the metal sulfonate salt. The fundamental problem with their argument with Claim 5 is it ignores, A, what they argued below, and what the court concluded below, with respect to what is an ionic compatibilizer. That's one of the components that's discussed in Column 5, and we're really talking about the section of the patent that is addressing, frankly, processing parameters and different ways that you can put these components together. But the very critical point on this attachment issue is, does that teach that the metal sulfonate salt is not attached in some examples, or in that embodiment? The answer is no, because the components that are being referenced there include the ionic compatibilizer. Well, the ionic compatibilizer, as a starting material, already has the metal sulfonate salt copolymerized in. How do we know that? We know that from Column 4, lines 62 through 63. We know it because they argued below. That's what the ionic compatibilizer is, and that it contains the metal sulfonate salt. And that's what the court found below on claim construction as to what the ionic compatibilizer is. Now, granted, it was in the context of the 159 patent, but it's an identical specification, and they argued that specification teaches that the ionic compatibilizer includes the metal sulfonate salt. So when we get to Column 5, and it says you can combine these things, the ionic compatibilizer with the nylon and the cobalt salt, and you can physically mix them, and you can put them in the extruder in different ways, and you can make master batches in one or the other, it has nothing to do with the attachment of the metal sulfonate salt, because that's already happened. That's one of the starting components in Column 5. So there's no support in Column 5 for this notion that it teaches embodiments that are not attached. And we could walk through that in more detail, but the point of Column 5 is simply that once you have those ingredients, including the ionic compatibilizer with the metal sulfonate salt in it, you can put them together in a lot of different ways and use your processing equipment as you choose to use it. To the extent they now want to argue that the abstract doesn't teach that the metal sulfonate salt can be attached, that's a new argument. It's inconsistent with what was argued below. It's inconsistent with the construction that the court entered below with respect to ionic compatibilizer. It's not a separate, the metal sulfonate salt is not separate from the ionic compatibilizer under the record in this case and the arguments made below. And certainly read as a whole, as counsel argued below, it includes and contains the metal sulfonate salt. On this issue, your honors, I'm not sure that there's anything new. There was, I'll address it very briefly because there was another new argument raised for the first time on this claim construction issue in their reply brief and that was, as Judge Robinson found when you look at her opinion, there was another reasonable interpretation of what this statement meant about it's not attached and she found it meant, it had to mean not directly attached because everybody agreed that it's attached to the aromatic nucleus, which is in turn copolymerized into the backbone. And she reasoned that in part because in the same response to office action, applicants had pointed out in connection with claim nine that it's attached to the aromatic nucleus and so reading that as a whole, she essentially agreed that this was a case in which he had to mean that it's attached indirectly to the aromatic nucleus since everybody agrees that's what happens. Nobody was saying below that it's not attached through the aromatic nucleus and then bind in. So now they come up on their reply brief on appeal and for the first time, they want to argue that this whole sulfomonomer can be free floating and that is a totally new way and shouldn't be considered, but it's also nonsensical. It's wrong for the same reason that Judge Robinson found in her claim construction opinion at page 18 and that's page 33 in the appendix. It's the same reason that the free floating metal sulfonate salt was wrong, nonsensical and internally inconsistent. The metal sulfonate salt cannot be attached to the monomer link of the copolyester yet be entirely separate from the copolyester at the same time. And she went on in a footnote to say even if the construction is directed to requiring the sulfomonomer to be free floating in the composition, that result would be contrary to the teachings of the specification. So this argument has no support in the record and it certainly doesn't diminish from Judge Robinson's finding that the reasonable interpretation of that office action was that the applicant was simply distinguishing between a direct attachment and an indirect attachment. With respect to comprising and containing, who knows what was in the applicant's mind, but both are open ended terms. It certainly was not a limiting amendment in the sense of it was not in response to some prior art argument. It was perhaps to try to address this direct indirect. We don't know. We don't have a mind reader on that, but it certainly wasn't limiting. He said it comprises, that's a broad open ended term, and then went on to explain that it's attached to the aromatic nucleus. So unless your honors have questions on those points, I don't think I have anything else on that argument. And if there are any other arguments that the court would like to hear from me, I'd be happy to address them. Thank you. Thank you. With respect to the fact that there's a thought that any of these arguments are new, they are not new. The one thing that we have been clear on from day one from M&G's point of view is that the proper claim construction for this term requires the metal sulfonate salt to be not attached from the co-polyester. Well, just because you've been clear on that doesn't mean that you didn't raise new arguments in the library. No one is disputing that that was an issue. The question is what you're relying on to support that argument, right? Correct, your honor. Now, under Harris Court v. Erickson, 417 F. 3rd, 1241, that it is proper to clarify and defend the original claim construction position. And in an interactive gift at 256 F. 3rd, 1323, it is proper to put forth clarifying arguments in the appeal that might not have been below. With that being said, I would also argue that it was raised. In footnote 12 of the court's claim construction brief on A33, this is where the judge did raise the fact that the sulfomonomer could be free-floating in the composition. Responding to the judge's position in that it was looked at below, the abstract of the patent clearly talks about the metal sulfonate salt could possibly be an ionic compatibilizer and it could be blended. And when you look at the abstract, which I don't believe that just the court did in writing her claim construction order, that that would talk about free-floating and that would be free-floating metal sulfonate salt in the resin. So with respect to Claim 9, on page 9 of our brief, we're responding to the argument. And Claim 9 and Claim 1 are two different points of attachment. And we have a figure on that page. And what you see is that the metal sulfonate salt is attached to the aromatic grain. Claim 9 only talks about an aromatic grain. Claim 1 talks about the metal sulfonate salt being part of or incorporated into or attached to the copolyester. So it is totally possible that the two claims, that they can reconcile with each other. But Claim 9 depends on Claim 1, so it includes all of the limitations that are present in Claim 1, right? Absolutely, Your Honor. And the way it would work then to reconcile that both of those survive just fine is that your metal sulfonate salt is attached to an aromatic grain over here, maybe attached to copolyester 1, but that metal sulfonate salt is not attached to the copolyester that would be required for Claim 1. So it's two separate components, basically, is the way to look at it. I'm not following that. If there's a copolyester with the sulfonate attached, that's what the claim construction requires. And that's what the specification requires. The fact that there may be copolyesters without a sulfonate attached seems irrelevant to me. I would argue, Your Honor, that it's not irrelevant. When you look at Column 5... Is there any enablement in the specification that has all copolyesters with no sulfonates attached? The only embodiment would be described in the abstract. There are no test runs and no examples. So everything else in the specification, at least some of the copolyesters, if not all of them, have a sulfonate attached? Other than the abstract, correct, Your Honor. What you have is in the abstract, it talks about the metal sulfonate salt would be freestanding. So you could have one copolyester and metal sulfonate salt, and the two shall never meet. That's the abstract. When you look at Column 5 and you look at the test runs, they talk about blending. And in those embodiments, you would have, say, two copolyesters, one with metal sulfonate salt and one not. How would you have, once you mix these things together, a batch where the metal sulfonates all stay unattached from the copolyester? Wouldn't they just naturally, at least some of them, attach to the polyester when you blend it chemically? It would depend on the process, Your Honor. From what I understand about the chemical process, depending on where in the process you introduce things under the right conditions, you would have polymerization or not. If you don't do it with the heat, with the right antimonies to be a catalyst and facilitate that polymerization, and you just cold mix it. Do any of the specifications have a process like that at all? Well, it does talk about blending, Your Honor. And it talks about the blending with the cobalt salt being part of a master batch. I think my time's up. Yes, your time is up. Thank you. Thank you. I thank both parties for the cases submitted.